## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AWOKE GEBRETSADIKE, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 1:14-cv-02059** |
| ) | |
| THE TRAVELERS HOME AND MARINE ) | |
| INSURANCE COMPANY, improperly ) | |
| identified as TRAVELERS INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### PURSUANT TO FED. R. CIV. P. 12(b)(6)

#### Introduction

Plaintiff Awoke Gebretsadike's Complaint fails to state any claims for which relief can

be granted by this Court and should be dismissed. Plaintiff was involved in an auto accident and

seeks various damages related to this accident under an auto policy issued to him by Travelers.

However, Plaintiff's Complaint asserts various tort claims which do not survive under black

letter law precluding tort causes of action for wrongful denial or failure to pay an insurance

claim. Nor has Plaintiff articulated a viable breach of contract claim due to the fact that Plaintiff

did not purchase, did not elect, and/or is not entitled to the coverage he seeks. As such, Travelers

respectfully requests this Court dismiss Plaintiff's Complaint in its entirety.

#### Statement of Facts

Plaintiff alleges that he was involved in an automobile accident on December 31, 2011

with an unknown driver (the "Accident"). (Compl. ¶3.) Plaintiff alleges that he sustained bodily

injuries and related medical expenses and lost wages due to the Accident, his vehicle was also

damaged (and has not been repaired), and he incurred expenses for a rental car.  (Compl. ¶¶ 4, 21.)   Travelers Home and Marine Insurance Company issued an auto insurance policy to Plaintiff that was in force on the date of the Accident (the "Policy").  (Compl. ¶2.)  A copy of the Policy is attached as Exhibit A.  The gist of Plaintiff's lengthy Complaint is that Travelers has not provided him with the insurance coverage to which he was entitled under the Policy with respect to the injuries and damages he allegedly sustained in the Accident.  (Compl.)

### Statement of Points and Authorities

**A.    Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint or any portion of it for failure to state a claim upon which relief may be granted.  A court considering a motion to dismiss must treat all the factual allegations in the Complaint as true, even if they are doubtful. *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009).  Additionally, the Court is restricted from looking outside the allegations of the Complaint unless there are "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Id.* *(quoting Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).  The Policy is such a document and can be considered by the Court in dismissing Plaintiff's Complaint.

**B.    Tort Claims**

Plaintiff's Complaint asserts the following tort claims against Travelers: Tortious Acts; Bad Faith; Tortious Interference with Contract; Breach of Fiduciary Duty; and Intentional Infliction of Emotional Distress.  Each of these counts relate to Travelers' alleged failure to provide Plaintiff with the coverage under the Policy he claims he was entitled to following the Accident.  Plaintiff seeks the following damages with respect to these counts – "Health

damages" consisting of headaches and left leg pain; "Social damages" consisting of an eviction which caused personal and private information to be exposed, the inability to move to another state, and negative interactions with neighbors, coworkers, and customers; and "Quality of life and past, present & future opportunity damages" relating to his inability to move to another state, having no car, and lack of ability to go to school or pursue his entrepreneurship opportunities. (Compl. pp. 17-19.)

Each of these tort counts (and related claims for damages) fails to state a claim upon which relief can be granted because: (1) the District of Columbia does not recognize a tort cause of action for bad faith refusal to pay an insurance claim; and (2) these tort claims are barred by the District of Columbia's economic loss/source of duty doctrine.

In *Brand v. Gov't Emp. Ins. Co.*, No. 04-01133, 2005 U.S. Dist. LEXIS 44787 (D.D.C. Nov. 29, 2005), the plaintiff, who was injured in an auto accident with an uninsured driver, alleged that GEICO wrongfully refused to pay his health care costs, lost time from work, and property damage under the uninsured motorists coverage of his GEICO auto policy. In addition to seeking to recover these items which he alleged were covered under the policy, the plaintiff also claimed that he sustained damages in the form of mental and emotional distress, additional lost wages, medical care, inconvenience, and attorneys' fees, all due to GEICO's wrongful denial of his insurance claim. In rejecting this claim, this Court in *Brand* held that the District of Columbia does not recognize a tort of bad faith refusal to pay an insurance claim. *Id.* at *14. Several other decisions from courts in the District of Columbia agree with this holding. *See Mitchell v. State Farm Ins. Co.*, 1991 U.S. Dist. LEXIS 789 (D.D.C. 1991) (granting insurer's motion to dismiss on grounds that "[s]ince the Complaint still alleged breach of implied covenant of good faith and fair dealing, State Farm correctly pointed out in its motion to dismiss that such

a tort has not been recognized in this jurisdiction."); *Washington v. Gov't Employees Ins. Co.*, 769 F. Supp. 383 (D.D.C. 1991). Thus, under settled law of the District of Columbia, each of Plaintiff's tort counts (and related damages claims)—which are all based on Travelers' alleged failure to provide insurance coverage to Plaintiff—fail because wrongful denial of an insurance claim does not give rise to any tort in the District of Columbia.

This result is also consistent with the District's economic loss/source of duty rule. *See generally Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 983 (D.C. App. 2014) (adopting the economic loss doctrine in the District of Columbia). Under this rule, duties that exist solely by virtue of a contractual relationship between the parties cannot form the basis of a tort claim. *See Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. App. 2008) ("Put another way, the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship. The tort must stand as a tort even if the contractual relationship did not exist."). The duties which Plaintiff's Complaint alleges Travelers breached—the alleged obligation of Travelers to pay him insurance benefits—exist only by virtue of the Policy, and do not exist outside the Policy (under D.C. common law or otherwise). Thus, under black letter law, the alleged breach of those duties cannot support any tort claim. *Id.*

For these reasons, Plaintiff's tort counts against Travelers (Tortious Acts; Bad Faith; Tortious Interference with Contract;[1] Breach of Fiduciary Duty;[2] and Intentional Infliction of

---

[1] In addition to the grounds stated above, Plaintiff's Tortious Interference count fails to the extent Plaintiff is alleging that Travelers interfered in the performance of its own contract with Plaintiff, as D.C. law is clear that a party to a contract cannot tortiously interfere with its own contract. *Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.*, 565 A.2d 285, 290 (D.C. App. 1989).

Emotional Distress[3]), and the related claims for "Health damages," "Social damages," and "Quality of life and past, present & future opportunity damages" fail under D.C. law and should be dismissed with prejudice.

## C.    Breach of Contract Claims

Plaintiff asks the Court to find that Travelers has breached the terms of its Policy with Plaintiff, but Plaintiff failed to attach the Policy to his Complaint. A copy of it is attached hereto as Exhibit A and can be considered by this Court when determining the merits of Plaintiff's claims under a Rule 12(b)(6) motion to dismiss because his allegations necessarily rely on the terms of the Policy. *See Hinton v. Corr. Corp. of Am.*, 624 F.Supp. 2d 45, 46-47 (D.D.C. 2009) (holding that "[m]atters that are not 'outside' the pleadings a court may consider on a motion to dismiss include 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), or documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.").

---

[2] In addition to the grounds stated above, this count additionally fails because D.C. courts have recognized that there is no fiduciary duty between an insurer and its insured that exists outside any contractual provision to the contrary. *Fogg v. Fid. Nat'l Title Ins. Co.*, 89 A.3d 510, 513-14 (D.C. App. 2014).

[3] In addition to the grounds stated above Plaintiff's Intentional Infliction of Emotional Distress claim should be dismissed because Plaintiff has failed to allege conduct by Travelers that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. App. 1982). At its best, Plaintiff's Complaint lays out a long series of unfortunate events that have befallen him following the Accident. This includes, according to Plaintiff's allegations, a dispute relating to the payment under a contract of insurance. This conduct by Travelers, even if his allegations of Travelers' handling of his claim are true, is not "extreme" or "outrageous," nor does it "go beyond all possible bounds of decency." As such, Plaintiff's count for Intentional Infliction of Emotional Distress should be dismissed with prejudice.

While the exact nature of Plaintiff's Breach of Contract claims is somewhat murky, a fair reading of Complaint indicates that Plaintiff alleges that Travelers breached the terms of the Policy by: (1) failing to provide him with rental car coverage; (2) by failing to provide him Personal Injury Protection (Automobile Medical Expense) Coverage ("PIP Coverage"); (3) failing to provide him with lost wages coverage; (4) failing to advance or pay his medical costs, lost wages, or expenses for a rental car under the Uninsured Motorist Coverage ("UM Coverage"); and (5) failing to investigate the accident and track down the hit and run driver who hit him.

The Policy articulates numerous elements of coverage which an insured may purchase including: Medical Payments Coverage (Coverage C); Collision (Coverage E); Comprehensive (Coverage F); Rental Reimbursement (Coverage G); Towing and Labor Costs (Coverage I); and Wage Loss Coverage (Coverage Q). Notably, as the Policy's Declarations make clear, Plaintiff did not purchase any of these coverages. Instead, as potentially related to this claim, he only purchased Uninsured Motorists Coverage (Coverage D and D2) and PIP Coverage (Coverage W). Thus, the plain terms of the Policy show that Plaintiff was not entitled to rental reimbursement coverage or lost wage coverage as sought in the Complaint, and there is no provision in the Policy which requires that Travelers investigate the unknown driver involved in his hit-and-run accident. As such, these elements of Plaintiff's breach of contract claim fail to state a claim upon which relief can be granted and should be dismissed.

The allegations of the Breach of Contract section of the Complaint also claim that Travelers' failed to pay for Plaintiff's medical treatment under the PIP Coverage of the Policy. However, under both D.C. law and the plain language of the Policy, Plaintiff had to elect to use that coverage within 60 days of the Accident. *See* D.C. Code § 31-2405; Ex. A (Policy PIP

Endorsement) at 1.)  This is because the affirmative election of PIP Coverage by the insured limits the insured's ability (in most cases) to pursue a claim/suit for damages against the alleged at-fault driver.  D.C. Code § 31-2405.  As Plaintiff's Complaint specifically spells out, he did not want to give up his ability to file a lawsuit against the unknown other driver—a requirement for him to have elected PIP Coverage.  (Compl. ¶9.)  And Plaintiff's Complaint does not allege that Plaintiff ever made the election for PIP Coverage (and, in fact, he did not).  Accordingly, under Plaintiff's own allegations in the Complaint (that he did not want to relinquish his tort claim against the other driver), he was not entitled to PIP Coverage under the Policy, and the allegation that Travelers failed to provide him such coverage fails to state a breach of contract claim.

Likewise, the allegations relating to payment under the Policy's UM Coverage should also be dismissed.  The true nature of Plaintiff's claim on this point is difficult to understand from the allegations in the Complaint, but a fair reading of the Complaint seems to indicate that Plaintiff wanted his medical treatments approved and paid for by Travelers up front, as well as continuing payments for lost wages and rental car, which Travelers declined to do.  However, Plaintiff misunderstands the coverage afforded by the UM Coverage, which is fatal to his claim.

Significantly, the plain language of the Policy makes clear that payment under the UM Coverage is for "damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury': 1. Sustained by an 'insured'; and 2. Caused by an accident."  (Ex. A at 6.)  UM Coverage under the Policy is not health insurance, nor is it akin to medical payments (med pay) coverage or PIP Coverage under which the insured is reimbursed directly for covered medical expenses (i.e., the insured submits the bill to the insurer and the insurer reimburses the insured for the covered amount).  Nor is UM Coverage the same as the wage loss coverage which Plaintiff did not purchase (where lost wages

are covered as a first party insurance for the insured). Instead, UM Coverage provides coverage for the tort liability of the uninsured driver to the insured (up to the applicable limit of $50,000) at such time as the tort liability (legal obligation to pay) of the uninsured driver has been established and the amount of such liability settled between the insurer and insured or established by judgment. Plaintiff has not pled or alleged in the Complaint the existence of such prerequisites to UM Coverage, and, thus, fails to state a claim upon which relief can be granted with respect to any alleged breach of contract relating to the UM Coverage.[4]

Because none of the allegations of Breach of Contract sufficiently state a claim for which relief may be granted, Travelers asks this Court to dismiss all the Breach of Contract claims alleged by Plaintiff in the Complaint.

## D.    Violation of Consumer Protection Procedures Act

Plaintiff alleges that Travelers violated the District of Columbia's Consumer Protection Procedures Act ("CPPA") by sending him a misleading letter about what his Policy provided relating to lost wage coverage. While Plaintiff does not identify the specific section of the CPPA these allegations trigger, generally, to state a misrepresentation claim under the CPPA, a plaintiff needs to allege that a company has misrepresented "'a material fact which has a tendency to mislead,' or fail to state a material fact 'if such failure tends to mislead.'" *Cannon v. Wells Fargo Bank, N.A.*, 926 F.Supp.2d 152, 173-74 (D.D.C. 2013) (*quoting* D.C. Code §28-3904(e)-(f)). And a "claim of unfair trade practice [under the CPPA] is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer." *Id.* at 174.

---

[4] While not pertinent to the issue before the Court, Travelers attempted on multiple occasions to provide coverage to Mr. Gebretsadike after the accident, but he refused to provide Travelers with his medical bills, medical records, or lost wage information, citing his privacy rights and other concerns.

The allegations in Plaintiff's Complaint do not support a claim under the CPPA. Plaintiff claims that Travelers misled him as to whether he could receive lost wages coverage under the terms of his Policy. However, the Complaint concedes that Travelers did provide him a copy of the Policy. Further, as the Policy Declarations demonstrate, Plaintiff had an insurance agent (Ace Insurance Services of Virginia, Inc.) through which he purchased the Policy. Thus, any statement by Travelers as to its understanding of the Policy's coverage cannot support a CPPA misrepresentation claim for both of two reasons: (1) Plaintiff had the Policy and could determine himself what coverage it provided; and (2) Plaintiff had an insurance agent through whom he procured the Policy and who was able to explain to Plaintiff the Policy's coverages and how they applied. Thus, Plaintiff cannot establish an actionable misrepresentation under the CPPA as to the coverage of the Policy.

Further, the fact that Plaintiff does not agree with Travelers as to the coverage of the Policy does not give rise to a claim under the CPPA. Every disagreement between an insurer and insured as to the extent of coverage (or amount of coverage) does not give rise to an actionable misrepresentation under the CPPA. Nor does an insured's misunderstanding of the insured's own coverage give rise to a misrepresentation claim. In this regard, Plaintiff's Complaint has not identified any misrepresentation by Travelers to support a CPPA claim. Instead, his issues with Travelers arise from his misunderstanding of what coverages he purchased (and did not purchase) and how those coverages apply. But where Plaintiff had the applicable policy, his misunderstanding (or even alleged misrepresentations by Travelers) as to his coverage cannot form a claim under the CPPA. For example, in *Whiting v. AARP*, 637 F.3d 355 (US App. D.C. 2011), a plaintiff claimed that promotional statements as to the coverage of a health insurance policy were misleading under the CPPA. The court rejected this claim finding that where the

plaintiff had a copy of the policy he could not be misled given the clear language in the policy that explained what medical services were and were not covered under the policy. *Id.* at 364. As the court recognized, the plaintiff had a copy of the policy which he could read and determine that only outpatient radiology services were covered under the terms of the policy.  Therefore the court found that he had failed to state a claim under the CPPA for misrepresentation. *Id.*; *see also Muldrow v. EMC Mortg. Corp.*, 444 Fed. Appx. 455, 455 (US App. D.C. 2011) (dismissing a claim under the CPPA because the plain language of the contract put plaintiff on notice of her repayment obligations).  Likewise here, the Plaintiff had the policy (as well as an insurance agent) and was able to determine what was covered by reading the policy. As such, under the allegations of the Complaint Plaintiff has failed to state a claim under the CPPA and this count should be dismissed.

### Conclusion

Because Plaintiff's Complaint fails to state any claims against Travelers upon which relief could be granted, Travelers requests that the Court enter an order dismissing the Complaint with prejudice and awarding such other and further relief as the Court deems just and appropriate.

Dated: December 29, 2014

Respectfully submitted,

**THE TRAVELERS HOME AND MARINE INSURANCE COMPANY**


   /s/   Kathryn E. Kasper, Esquire
By Counsel


Kathryn E. Kasper (DCB No.: 980045)
Hancock, Daniel, Johnson & Nagle, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060

Telephone:  (804) 967-9604
Facsimile:  (804) 967-9888
kkasper@hdjn.com
*Counsel for The Travelers Home and Marine Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2014, a copy of the foregoing was sent via first class mail, postage pre-paid to the following:

Awoke Gebretsadike
5513 7th St. NW
Washington, D.C.  20011
*Plaintiff, Pro Se*

 /s/   Kathryn E. Kasper, Esquire
Kathryn E. Kasper (DC Bar No. 980045)
4701 Cox Road, Suite 400
Glen Allen, VA  23060
(804) 967-9604 telephone
(804) 967-9888 facsimile
kkasper@hdjn.com
*Attorney for Defendant The Travelers Home and Marine Insurance Company*

D00SRZ00081 F3316D70 7498 11/17/11

## DISTRICT OF COLUMBIA PERSONAL AUTOMOBILE LIABILITY
### INSURANCE IDENTIFICATION CARD

The vehicle described below is covered by a personal automobile liability
policy that meets District of Columbia insurance requirements.

Company: THE TRAVELERS HOME AND MARINE INSURANCE COMPANY
One Tower Square, Hartford, CT 06183

| Agent | Policy Number | Effective Date | Expiration Date |
|---|---|---|---|
| 0CMT62 | 988892798 101 1 | 12/15/11 | 06/15/12 |

Year   Make/Model                Vehicle Identification Number
96     SUBAR/IMPREZA L           JF1GC4354TH510867

Agent
ACE INS SRVCS OF VA INC
5622 COLUMBIA PIKE STE 310
FALLS CHURCH VA 22041

Insured
AWOKE GEBRETSADIKE
621 KENNEDY ST NW
WASHINGTON DC 20011301

KEEP THIS CARD IN THE VEHICLE AT ALL TIMES.

Rev. 1-07    See Important Notice On Reverse Side    TRAVELERS J

---

## DISTRICT OF COLUMBIA PERSONAL AUTOMOBILE LIABILITY
### INSURANCE IDENTIFICATION CARD

The vehicle described below is covered by a personal automobile liability
policy that meets District of Columbia insurance requirements.

Company: THE TRAVELERS HOME AND MARINE INSURANCE COMPANY
One Tower Square, Hartford, CT 06183

| Agent | Policy Number | Effective Date | Expiration Date |
|---|---|---|---|
| 0CMT62 | 988892798 101 1 | 12/15/11 | 06/15/12 |

Year   Make/Model                Vehicle Identification Number
96     SUBAR/IMPREZA L           JF1GC4354TH510867

Agent
ACE INS SRVCS OF VA INC
5622 COLUMBIA PIKE STE 310
FALLS CHURCH VA 22041

Insured
AWOKE GEBRETSADIKE
621 KENNEDY ST NW
WASHINGTON DC 20011301

PRESENT THIS CARD TO THE MOTOR VEHICLE DEPARTMENT WITH
YOUR APPLICATION FOR NEW REGISTRATION.

Rev. 1-07    See Important Notice On Reverse Side    TRAVELERS J

Exhibit A

IN CASE OF AN ACCIDENT

* Call Travelers immediately

  1-800-252-4633(CLAIM33) toll free, 24 hours a day.

* Be sure to get name and address of each driver, passenger, and witness; and insurance company and policy number for each vehicle involved.

* Only discuss the accident with police officers or Travelers representatives.

FRAUD HOTLINE: 800-637-2830 (6-FRAUD-0)

FOR POLICY SERVICE CALL 703-931-9315

IN CASE OF AN ACCIDENT

* Call Travelers immediately

  1-800-252-4633(CLAIM33) toll free, 24 hours a day.

* Be sure to get name and address of each driver, passenger, and witness; and insurance company and policy number for each vehicle involved.

* Only discuss the accident with police officers or Travelers representatives.

FRAUD HOTLINE: 800-637-2830 (6-FRAUD-0)

FOR POLICY SERVICE CALL 703-931-9315

Exhibit A

**TRAVELERS**

## Automobile Policy Continuation Declarations

**1. Named Insured**
AWOKE GEBRETSADIKE
621 KENNEDY ST NW
WASHINGTON DC 200113011

**Your Agency's Name and Address**
ACE INS SRVCS OF VA INC
5622 COLUMBIA PIKE STE 310
FALLS CHURCH VA 22041

| | | | |
|---|---|---|---|
| Your Policy Number | 988892798 101 1 | For Policy Service Call | 703.931.9315 |
| Your Account Number | 988892798 | For Claim Service Call | 1.800.CLAIM33 |

**2. Premium**
Your Total Premium for the Policy Period is $471.00.
The policy period is from December 15, 2011 to June 15, 2012.

**3. Your Vehicles**
1. 1996 SUBAR IMPREZA L

**Identification Numbers**
JF1GC4354TH510867

**4. Coverages, Limits of Liability and Premiums**
Insurance is provided only where a premium is shown for the coverage.

|       |                                                                              | VEHICLE 1 96 SUBAR IMPREZA L |
|-------|------------------------------------------------------------------------------|----------|
| A.    | Bodily Injury<br>$50,000 each person.............. $<br>$100,000 each accident | 207 |
| B.    | Property Damage<br>$50,000 each accident............. $ | 146 |
| D.    | Uninsured Motorists Bodily Injury<br>$50,000 each person.............. $<br>$100,000 each accident<br>See Endorsement A08040 | 63 |
| D1.   | Underinsured Motorists Bodily Injury<br>$50,000 each person.............. $<br>$100,000 each accident<br>See Endorsement A08040 | 35 |

Continued on next page

080804/00081 F3116D70 7496 11/17/11

PL-7782 Rev. 08-07  Page 1 of 4

Exhibit A



## 4. Coverages, Limits of Liability and Premiums (continued)

96 SUBAR
IMPREZA L

D2.   Uninsured Motorists Property Damage
      $50,000 each accident............ $      8
      See Endorsement A08040

D3.   Underinsured Motorists Property Damage
      $50,000 each accident............ $      6
      See Endorsement A08040

W.    Medical Expense
      $50,000 each accident............ $      5
      See Endorsement A08020

X.    Funeral Expense
      $4,000 each person each accident. $      1
      See Endorsement A08020

Subtotal for your vehicle............. $    471

Total Premium for This Policy.                     $   471

## 5. Information Used to Rate Your Policy

Discounts and Advantages

Safe Driver Advantage

Early Quote Advantage

| Drivers | DATE OF BIRTH | SEX | MARITAL STATUS |
|---|---|---|---|
| 1.  AWOKE | 10-30-83 | Male | Single |

| Vehicles | USE OF VEHICLE | LOCATION OF VEHICLE |
|---|---|---|
| 1.  96 SUBAR IMPREZA L | Commute | WASHINGTON DC |

Continued on next page



Named Insured    AWOKE GEBRETSADIKE
Policy Number    988892798 101 1
Policy Period    December 15, 2011 to June 15, 2012.
Issued On Date   November 17, 2011

---

## 5. Information Used to Rate Your Policy (continued)

It is important that the above information is correct to ensure that your policy is properly rated. If there are errors or changes to this information, please notify your Travelers representative immediately.

---

## 6. Other Information

Accident Forgiveness helps keep your rates from going up just because of an accident. Your policy is not yet eligible for Accident Forgiveness. To qualify*, you must have Travelers auto insurance for 4 years and your policy must be free of accidents and violations for 5 years.
* Eligibility and qualification may vary by state.

Your Insurer
The Travelers Home and Marine Insurance Company
One Tower Square, Hartford, CT 06183

Policy Endorsements

A08010 Amendment of Policy Provisions - District of Columbia
A08020 Personal Injury Protection Coverage - District of Columbia
A08040 Uninsured/Underinsured Motorists Coverage - District of Columbia
A00391 Personal Auto Policy Coverage Enhancement Endorsement

Policy Edition   6          Policy Form   101          Issued on    11/17/11

Thank you for insuring with Travelers. We appreciate your business. If you have any questions about your insurance, please contact your Travelers representative.

Continued on next page

**TRAVELERS**

FOR YOUR INFORMATION

Children & air bags. . . it's as easy as 1 - 2 - 3
1. Never put a child seat (those used with infants) in the front seat
   of a car with air bags.
2. Make sure all children are buckled up no matter where they sit.
   Unbuckled children can be hurt or killed by an air bag.
3. The rear seat (those with seat belts) is the safest place for children
   of any age to ride.

For information about how Travelers compensates independent agents and
brokers, please visit www.Travelers.com or call our toll free telephone
number 1-866-904-8348. You may also request a written copy from Marketing
at One Tower Square, 2GSA, Hartford, Connecticut 06183.

411/0CMT62

Exhibit A

## IMPORTANT BILLING NOTICE

This notice contains important information about our billing options and fees for policy number 988892798 101 1.

You have chosen to pay your insurance premium in monthly installments by Recurring Credit Card (RCC). Please note that a service charge of $1.00 will apply per installment. In the event that your payment is returned by your bank, it may result in the automatic conversion of your Recurring Credit Card (RCC) account to Bill by Mail.

If your billing needs change, we offer several ways to pay your premium:

| Bill Plan | Monthly | Lump Sum |
|---|---|---|
| Electronic Funds Transfer (EFT) | $ 1.00 | No Charge |
| Recurring Credit Card (RCC) | $ 1.00 | No Charge |
| Bill by Mail | $ 5.00 | No Charge |

    Late Charge: $10.00 per occurrence
    Payments returned by your bank: $15.00 per occurrence

You may be able to save up to 5% off your policy premium with our Paid in Full Discount! Simply contact your insurance representative and switch to one of our lump sum (pay in full) billing options. Remember, to get the discount you must switch by your policy effective date.

In the event two payments are returned during a 12 month period you will be required to pay with guaranteed funds for 182 days from the date of the last returned payment. Guaranteed funds are credit card, bank check, money order or home banking payments. Other forms of payment will be returned. You will not be eligible to use our Electronic Funds Transfer (EFT) or Recurring Credit Card (RCC) payment plans.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

If you have multiple policies with us you may be able to combine those policies into a single billing account. If you have selected one of our monthly billing options, and you combine your policies into a single billing account, you will be charged just one service charge per installment, and not per individual account.

To add this policy to an existing billing account or if you have other questions about this notice, please call your insurance representative at 703-931-9315.



# Automobile Policy Booklet

# from Travelers

TOC8000

# YOUR PERSONAL AUTO POLICY QUICK REFERENCE

|  |  | Beginning On Page |
|---|---|---|
|  | **DECLARATIONS PAGE** |  |
|  | **Your Name and Address** |  |
|  | **Your Auto or Trailer** |  |
|  | **Policy Period** |  |
|  | **Coverages and Amounts of Insurance** |  |
|  | AGREEMENT | 1 |
|  | DEFINITIONS | 1 |
| LIABILITY | Insuring Agreement | 2 |
|  | Supplementary Payments | 2 |
|  | Exclusions | 2 |
|  | Limit of Liability | 3 |
|  | Out of State Coverage | 4 |
|  | Financial Responsibility | 4 |
|  | Other Insurance | 4 |
| MEDICAL PAYMENTS | Insuring Agreement | 4 |
|  | Exclusions | 5 |
|  | Limit of Liability | 5 |
|  | Other Insurance | 5 |
| UNINSURED MOTORISTS | Insuring Agreement | 6 |
|  | Exclusions | 6 |
|  | Limit of Liability | 7 |
|  | Other Insurance | 7 |
|  | Arbitration | 7 |
| DAMAGE TO YOUR AUTO | Insuring Agreement | 8 |
|  | Transportation Expenses | 9 |
|  | Exclusions | 9 |
|  | Limit of Liability | 10 |
|  | Payment of Loss | 10 |
|  | Loss Payable Clause | 10 |
|  | No Benefit to Bailee | 10 |
|  | Other Insurance | 10 |
|  | Appraisal | 10 |
| DUTIES AFTER AN ACCIDENT OR LOSS | General Duties | 11 |
|  | Additional Duties for Uninsured Motorists Coverage | 11 |
|  | Additional Duties for Collision and Comprehensive Coverages | 11 |
| GENERAL PROVISIONS | Bankruptcy | 11 |
|  | Changes | 11 |
|  | Fraud | 11 |
|  | Legal Action Against Us | 11 |
|  | Our Right to Recover Payment | 12 |
|  | Policy Period and Territory | 12 |
|  | Termination | 12 |
|  | Transfer of your Interest in this Policy | 13 |
|  | Two or More Auto Policies | 13 |

Edition 6 of Policy Forms 101 and LP

# PERSONAL AUTO POLICY

## Travelers Property Casualty Companies
Hartford, Connecticut
(Each a Stock Insurance Company)

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages you have selected. These are shown by premium entries in the Declarations. The Declarations is a part of this policy.

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

B. "We", "us" and "our" refer to the Company shown in the Declarations providing this insurance.

C. For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

   a. a private passenger auto; or

   b. a pickup or van.

This provision (J.2.) applies only if:

   a. you acquire the vehicle during the policy period;

   b. you ask us to insure it within 30 days after you become the owner; and

   c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if:

   a. you wish to add or continue Damage to Your Auto Coverages; or

   b. it is a pickup or van used in any "business" other than farming or ranching.

Exhibit A

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;   d. loss; or

b. repair;   e. destruction.

c. servicing;

## LIABILITY
### Coverage A - Bodily Injury
### Coverage B - Property Damage

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" (Coverage A) or "property damage" (Coverage B) for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for these coverages has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in these coverages means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under these Liability Coverages.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under these Liability Coverages. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for these coverages.

4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

A. We do not provide Liability Coverages for any person:

1. Who intentionally causes "bodily injury" or "property damage".

2. For damage to property owned or being transported by that person.

3. For damage to property:

a. rented to;

b. used by; or

c. in the care of;

that person.

Edition 6 of Policy forms
101 and LP

This exclusion (A.3.) does not apply to damage to a residence or private garage.

4. For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. selling;      d. storing; or

   b. repairing;    e. parking;

   c. servicing;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. you;

   b. any "family member"; or

   c. any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that person:

   a. is an insured under a nuclear energy liability policy; or

   b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. American Nuclear Insurers;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverages for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than "your covered auto", which is:

   a. owned by you; or

   b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

   a. owned by any "family member"; or

   b. furnished or available for the regular use of any "family member".

However, this exclusion (B.3.) does not apply to your maintenance or use of any vehicle which is:

   a. owned by a "family member"; or

   b. furnished or available for the regular use of a "family member".

## LIMIT OF LIABILITY

### A. Single Liability Limit

1. If the Declarations show a single limit of liability for Coverage A and Coverage B combined, this limit is our maximum limit of liability for all damages for "bodily injury" and "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

   a. "Insureds";

   b. Claims made;

   c. Vehicles or premiums shown in the Declarations; or

d.  Vehicles involved in the auto accident.

2.  We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (A.2.) will not change our total limit of liability.

**B.  Split Liability Limits**

If the Declarations show separate limits of liability for Coverage A and Coverage B, the limit of liability shown in the Declarations for each person for Coverage A is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Coverage A is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Coverage B is our maximum limit of liability for all "property damage" resulting from any one auto accident. These limits are the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations; or

4.  Vehicles involved in the auto accident.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A.  If the state or province has:

1.  A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2.  A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B.  No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

---

# MEDICAL PAYMENTS
## Coverage C

---

### INSURING AGREEMENT

A.  We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1.  Caused by accident; and

2.  Sustained by an "insured".

We will pay only those expenses incurred within 3 years from the date of the accident.

B.  "Insured" as used in this coverage means:

1.  You or any "family member":

a.  while "occupying"; or

b.  as a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a trailer of any type.

2.  Any other person while "occupying" "your covered auto".

## EXCLUSIONS

We do not provide Medical Payments Coverage for any person for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by you; or

   b. furnished or available for your regular use.

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by any "family member"; or

   b. furnished or available for the regular use of any "family member".

   However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. discharge of a nuclear weapon (even if accidental);

   b. war (declared or undeclared);

   c. civil war;

   d. insurrection; or

   e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. nuclear reaction;

   b. radiation; or

   c. radioactive contamination.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

   We will, however, double the applicable limit of liability for you or any "family member" if wearing a properly installed seat belt at the time of the accident.

B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Coverage A or Coverage D.

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Coverage A or Coverage D.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

# UNINSURED MOTORISTS
## Coverage D

**INSURING AGREEMENT**

A. We will pay damages which an "insured" is legal-
ly entitled to recover from the owner or
operator of an "uninsured motor vehicle" be-
cause of "bodily injury":

  1. Sustained by an "insured"; and

  2. Caused by an accident.

  The owner's or operator's liability for these
  damages must arise out of the ownership, main-
  tenance or use of the "uninsured motor
  vehicle".

  Any judgment for damages arising out of a suit
  brought without our written consent is not
  binding on us.

B. "Insured" as used in this coverage means:

  1. You or any "family member".

  2. Any other person "occupying" "your
  covered auto".

  3. Any person for damages that person is en-
  titled to recover because of "bodily injury"
  to which this coverage applies sustained by
  a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor
vehicle or trailer of any type:

  1. To which no bodily injury liability bond or
  policy applies at the time of the accident.

  2. To which a bodily injury liability bond or
  policy applies at the time of the accident.
  In this case its limits for bodily injury
  liability must be less than the minimum
  limits for bodily injury liability specified by
  the financial responsibility law of the state
  in which "your covered auto" is principally
  garaged.

  3. Which is a hit and run vehicle whose
  operator or owner cannot be identified and
  which hits:

    a. you or any "family member";

    b. a vehicle which you or any "family mem-
    ber" are "occupying"; or

    c. "your covered auto".

  4. To which a bodily injury liability bond or
  policy applies at the time of the accident
  but the bonding or insuring company:

    a. denies coverage; or

    b. is or becomes insolvent.

  However, "uninsured motor vehicle" does not
  include any vehicle or equipment:

  1. Owned by or furnished or available for the
  regular use of you or any "family member".

  2. Owned or operated by a self-insurer under
  any applicable motor vehicle law.

  3. Owned by any governmental unit or agency.

  4. Operated on rails or crawler treads.

  5. Designed mainly for use off public roads
  while not on public roads.

  6. While located for use as a residence or
  premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists
Coverage for "bodily injury" sustained by any
person:

  1. While "occupying", or when struck by, any
  motor vehicle owned by you or any "family
  member" which is not insured for this
  coverage under this policy. This includes a
  trailer of any type used with that vehicle.

  2. If that person or the legal representative
  settles the "bodily injury" claim without our
  consent.

  3. While "occupying" "your covered auto"
  when it is being used to carry persons or
  property for a fee. This exclusion (A.3.)
  does not apply to a share-the-expense car
  pool.

  4. Using a vehicle without a reasonable belief
  that that person is entitled to do so.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. workers' compensation law; or

2. disability benefits law.

## LIMIT OF LIABILITY

A. **Single Limit**

If the Declarations show a single limit of liability for Coverage D, this limit is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. **Split Limits**

If the Declarations show separate limits of liability for each person and each accident, the limit of liability shown for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. These limits are the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

C. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who

may be legally responsible. This includes all sums paid under Coverage A; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

a. workers' compensation law; or

b. disability benefits law.

D. Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Coverage A.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this coverage; or

2. As to the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability

specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision.

If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

D. Instead of this method, we and the "insured" may agree to use another method of arbitration.

## DAMAGE TO YOUR AUTO
### Coverage E - Collision
### Coverage F - Comprehensive
### (Other than Collision)
### Coverage G - Rental Reimbursement
### Coverage I - Towing and Labor Costs

INSURING AGREEMENT

A. **Collision and Comprehensive (Other than Collision).** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. "Collision" only if the Declarations indicate that Coverage E - Collision is provided for that auto.

2. Other than "collision" only if the Declarations indicate that Coverage F - Comprehensive is provided for that auto.

If there is loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. **Rental Reimbursement.** When there is a loss to one of "your covered autos" described in the Declarations for which a specific premium charge indicates that Coverage G - Rental Reimbursement is afforded:

We will reimburse you for expenses you incur to rent a substitute auto. This coverage applies only if:

1. The auto is withdrawn from use for more than 24 hours; and

2. The loss is caused by "collision" or covered under Coverage F - Comprehensive of this policy.

However, this coverage does not apply when there is a total theft of the auto.

Our payment will be limited to that period of time reasonably required to repair or replace the auto. We will pay up to the amount per day to a maximum amount as shown in the Declarations.

C. **Towing and Labor Costs.** We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the limit of liability shown in the Declarations for Coverage I - Towing and Labor Costs as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. We will only pay for labor performed at the place of disablement.

D. "Collision" means the upset of "your covered auto" or its impact with another vehicle or object. Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision" you may elect to have it considered a loss caused by "collision".

E. "Non-owned auto" means any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member". However, "non-owned auto" does not include any vehicle used as a temporary substitute for a vehicle you own which is out of normal use because of its:

1. Breakdown;      4. Loss; or
2. Repair;          5. Destruction.
3. Servicing;

## TRANSPORTATION EXPENSES

In addition, under Coverage F we will pay up to $15 per day, to a maximum of $450, for transportation expenses incurred by you. This applies only in the event of the total theft of "your covered auto". We will pay only transportation expenses incurred during the period:

1. Beginning 48 hours after the theft; and
2. Ending when "your covered auto" is returned to use or when we pay or offer to pay for its loss.

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" which occurs while it is used to carry persons or property for a fee. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical or electrical breakdown or failure; or
   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto".

3. Loss due to or as a consequence of:
   a. radioactive contamination;
   b. discharge of any nuclear weapon (even if accidental);
   c. war (declared or undeclared);

d. civil war;
e. insurrection; or
f. rebellion or revolution.

4. Loss to equipment designed for the reproduction of sound. This exclusion (4.) does not apply if the equipment is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records or other devices for use with equipment designed for the reproduction of sound.

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:
   a. acquire during the policy period; and
   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" or any vehicle used as a temporary substitute for a vehicle you own, when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:
   a. TV antennas;
   b. awnings or cabanas; or
   c. equipment designed to create additional living facilities.

9. Loss to any of the following or their accessories:
   a. citizens band radio;
   b. two-way mobile radio;
   c. telephone; or
   d. scanning monitor receiver.

   This exclusion (9.) does not apply if the equipment is permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto". This opening must be normally used by the auto manufacturer for the installation of a radio.

10. Loss to equipment designed or used for the detection or location of radar.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. selling;     d. storing; or

   b. repairing;     e. parking;

   c. servicing;

vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer".

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

## LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will mail the loss payee written notice at least 10 days before the effective date of cancellation.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER INSURANCE

If other insurance also covers the loss we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" or any vehicle used as a temporary substitute for a vehicle you own shall be excess over any other collectible insurance.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## DUTIES AFTER AN ACCIDENT OR LOSS

### GENERAL DUTIES

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. to physical exams by physicians we select. We will pay for these exams.

   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss when required by us.

### ADDITIONAL DUTIES FOR UNINSURED MOTORISTS COVERAGE

A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit and run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

### ADDITIONAL DUTIES FOR COLLISION AND COMPREHENSIVE COVERAGES

A person seeking coverage for Collision or Comprehensive (Other than Collision) must also:

1. Take reasonable steps after loss to protect "your covered auto" and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change according to the manuals then in use by us.

We may revise this policy form to provide more coverage without additional premium charge. If we do this your policy will automatically provide the additional coverage as of the date the revision is effective in your state.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under the Liability Coverages, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply, under the Damage to Your Auto Coverages, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy period, and each successive policy period, begins and ends at 12:01 a.m. standard time at your address.

C. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

   b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown there:

   a. at least 10 days notice:

      (1) if cancellation is for nonpayment of premium; or

      (2) if notice is mailed during the first 60 days this policy is in effect and this is not a continuation policy; or

   b. at least 30 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a continuation policy, we will cancel only:

   a. for nonpayment of premium; or

   b. if your driver's license or that of:

      (1) any driver who lives with you; or

      (2) any driver who customarily uses "your covered auto";

      has been suspended or revoked. This must have occurred:

      (1) during the policy period; or

      (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. if the policy was obtained through material misrepresentation.

4. Nonpayment of Premium. Nonpayment of premium shall mean failure to pay any premium or premium installment when due whether payable directly to us or through a premium financing plan or credit extension.

B. **Termination.** If we decide not to continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown there. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is other than 1 year, we will have the right not to continue it only at each anniversary of its original effective date. If that date is

the 29th, 30th, or 31st of a month, we may consider the first day of the next month to be this anniversary.

C. **Automatic Termination.** If we offer to continue and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D. **Other Termination Provisions.**

1. If the law in effect in your state at the time this policy is issued or continued:

   a. requires a longer notice period;

   b. requires a special form of or procedure for giving notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our

manuals. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

B. Coverage will only be provided until the next anniversary of the policy's original effective date.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

This policy is signed for the member company of Travelers which is the insurer under this policy.

*Wendy C. Skjerven*

Wendy C. Skjerven
Corporate Secretary

*Gregory C. Toczydlowski*

Gregory C. Toczydlowski
President
Personal Insurance

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1985

Exhibit A



# PERSONAL AUTO POLICY
## COVERAGE ENHANCEMENT ENDORSEMENT

### I. DEFINITIONS

The provision J.4. of the definition of "your covered auto" (J.) is replaced by the following:

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. breakdown;      d. loss; or

   b. repair;         e. destruction.

   c. servicing;

   This provision (J.4.) does not apply to the Damage To Your Auto Section.

### II. DAMAGE TO YOUR AUTO

The Damage To Your Auto Section is amended as follows:

A. Paragraph A. of the Insuring Agreement is replaced by the following:

   A. Collision and Comprehensive (Other Than Collision). We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment. We will pay for such loss to "your covered auto" minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

      1. "Collision" only if the Declarations indicate that Coverage E - Collision is provided for that auto.

      2. Other than "collision" only if the Declarations indicate that Coverage F - Comprehensive is provided for that auto.

   If there is such a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations. We will not subtract any deductible amount from the amount we will pay for a loss to a "non-owned auto".

B. Paragraph B. of the Insuring Agreement is replaced by the following:

   Extended Transportation Expenses

   When there is a loss to a "your covered auto" described in the Declarations for which a specific premium charge indicates that Coverage G - Extended Transportation Expenses is afforded, or to a "non-owned auto", we will pay, without application of a deductible, up to the amount per day to a maximum amount as shown in the Declarations for:

      1. Transportation expenses incurred by you.

      2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto".

   This coverage applies only if:

      1. "Your covered auto" or the "non-owned auto" is withdrawn from use for more than 24 hours; and

      2. The loss is caused by "collision" or is covered under Coverage F - Comprehensive of this policy.

   However, this coverage does not apply when there is a total theft of "your covered auto" or a "non-owned auto". Such coverage is provided under Coverage F of this policy.

   Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

C. The first sentence of Paragraph D. of the Insuring Agreement is replaced by the following:

   "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

D. Paragraph E. of the Insuring Agreement is replaced by the following:

   "Non-owned auto" means:

Exhibit A

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
   a. breakdown;     d. loss; or
   b. repair;        e. destruction.
   c. servicing;

E. The Transportation Expenses provision is replaced by the following:

Transportation Expenses

In addition, under Coverage F, we will pay, without application of a deductible, up to the greater of the following amounts:

1. $15 per day, to a maximum of $450; or

2. For a "your covered auto", the amount per day, to a maximum amount shown, if any, on the Declarations for Coverage G for that specific "your covered auto"; or

3. For a "non-owned auto", the amount per day, to a maximum amount shown, if any, on the Declarations for Coverage G for any one "your covered auto".

This applies only in the event of the total theft of "your covered auto" or a "non-owned auto". The coverage applies to a "your covered auto" only when the Declarations show that Coverage F is provided for that specific "your covered auto". The coverage applies to a "non-owned auto" if the Declarations show that Coverage F is provided for any "your covered auto".

We will pay:

1. Transportation expenses incurred by you in the event of the total theft of "your covered auto"; or

2. Loss of use expenses for which you become legally responsible in the event of a total theft of a "non-owned auto".

We will pay only those expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use, or, we pay or offer to pay for its loss.

F. The following provision is added to the Insuring Agreement:

Airbag Replacement Coverage

In addition, under Coverage F, we will pay to replace or repack an airbag that inflates due to malfunction in "your covered auto". Exclusion 2 does not apply to this additional insurance.

G. Exclusions 1., 2. and 7. are replaced by the following:

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used to carry persons or property for a fee. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical or electrical breakdown or failure; or
   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

H. The Other Insurance provision is replaced by the following:

TIC
PL-5771 8-96

Page 2 of 3

Endorsement Symbol Number
A00391

Exhibit A

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## III. MISCELLANEOUS TYPE VEHICLE ENDORSEMENT AMENDMENT

If the Miscellaneous Type Vehicle Endorsement is attached to this policy:

A. The Definitions Section I.B.4. of that endorsement is amended to add the following:

This provision (B.4.) does not apply to the Damage To Your Auto Section.

B. The following is added to Damage To Your Auto, Section II.D. above:

3. Any motor home, motorcycle or other similar type vehicle, all terrain vehicle, dune buggy or golf cart you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its;

   a. breakdown;  d. loss; or
   b. repair;     e. destruction.
   c. servicing;

## IV. SNOWMOBILE ENDORSEMENT AMENDMENT

If the Snowmobile Endorsement is attached to this policy, the following provision is added to the definition of "your covered snowmobile" found in section I.C.3. of that Endorsement:

This provision (C.3.) does not apply to the Damage To Your Auto Section.

TIC
PL-6771 8-96

Page 3 of 3

Endorsement Symbol Number
A00391

Exhibit A

# AMENDMENT OF POLICY PROVISIONS - DISTRICT OF COLUMBIA

## I. SUSPENSION OF POLICY COVERAGE

The following provision is added:

In accordance with the requirements of the District of Columbia no-fault law, all policy coverages shall be suspended for you, or any "family member", who operates any vehicle during any period when that person's driver's license is suspended or revoked.

## II. MEDICAL PAYMENTS

The following is added under "Limit of Liability":

Any amounts otherwise payable for expenses under auto medical payments coverage shall be reduced by all sums paid or payable under personal injury protection coverage applicable to the same element of loss.

## III. GENERAL PROVISIONS

The General Provisions Section is amended as follows:

A. Paragraph A. of the Our Right to Recover Payment provision does not apply to Uninsured Motorists Coverage.

B. The Termination provision is amended as follows:

TERMINATION

Paragraphs A. Cancellation, B. Termination and C. Automatic Termination are replaced by the following:

A. Cancellation. This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:
   a. returning this policy to us; or
   b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown there:
   a. at least 10 days if the notice is mailed during the first 30 days this policy is in effect and this is not a continuation policy; or
   b. at least 30 days notice in all other cases.

3. After this policy has been in effect for 30 days, or if this is a continuation policy, we will cancel only:
   a. for non-payment of premium; or
   b. if the named insured has his or her license suspended during the policy period; or
   c. if the motor vehicle registration certificate of "your covered auto" has been suspended or revoked during the policy period; or
   d. if the policy was obtained through material misrepresentation.

4. Nonpayment of Premium. Nonpayment of premium shall mean failure to pay any premium or premium installment when due whether payable directly to us or through a premium financing plan or credit extension.

B. Termination. If we decide not to continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown there. Notice will be mailed at least 30 days before the end of the policy period.

C. Automatic Termination. If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

TIC
PL-8506 11-88

Endorsement Symbol Number
A08010

Exhibit A

## PERSONAL INJURY PROTECTION COVERAGE - DISTRICT OF COLUMBIA

The Definitions and General Provisions of this policy apply unless modified by this endorsement.

PERSONAL INJURY PROTECTION BENEFITS WILL NOT BE PROVIDED TO ANY INSURED UNLESS WE ARE NOTIFIED WITHIN SIXTY DAYS OF AN ACCIDENT OF THAT INSURED'S ELECTION TO RECEIVE PERSONAL INJURY PROTECTION BENEFITS.

### SECTION I

Coverage W    Automobile Medical Expense Coverage

We will pay Personal Injury Protection benefits for medical expense in accordance with the District of Columbia Compulsory No-Fault Motor Vehicle Insurance Act of 1982, Amendments Act of 1985 (the Act). We will pay these benefits to or for an "insured" who sustains "bodily injury" in an accident arising out of the maintenance or use of a "motor vehicle" or "vehicle".

These medical expense benefits consist of reasonable charges incurred for reasonably necessary products, services and accommodations for an "insured's":

    (1) care;

    (2) recovery; or

    (3) rehabilitation.

Only semi-private hospital room charges will be paid unless special or intensive care is required. We will pay for a product, service or accommodation only if its provider is licensed or approved and complies with any applicable laws or regulations pertinent thereto.

### Exclusions

We will not pay Personal Injury Protection benefits for "bodily injury":

    (1) Sustained by you while "occupying" or operating any "vehicle" owned by you and not insured for this coverage under this policy.

    (2) Sustained by any person injured while intentionally causing or attempting to cause

injury to himself, herself or any other person.

    (3) Sustained by the owner or operator of a "vehicle" involved in the accident if no "motor vehicle" is involved in the accident.

    (4) Sustained by any person injured as a result of conduct within the course of the "business" of repairing, servicing or otherwise maintaining "motor vehicles" or "vehicles". This exclusion (4) does not apply if the conduct is:

        (a) off the "business" premises; or

        (b) in the course of loading or unloading a "motor vehicle" or "vehicle".

    (5) Sustained by any person while "occupying" a "motor vehicle" or "vehicle" located for use as a residence or premises.

    (6) Caused by or as a consequence of:

        (a) discharge of a nuclear weapon (even if accidental);

        (b) war (declared or undeclared);

        (c) civil war;

        (d) insurrection; or

        (e) rebellion or revolution.

    (7) From or as a consequence of the following, whether controlled or uncontrolled or however caused:

        (a) nuclear reaction;

        (b) radiation; or

        (c) radioactive contamination.

### DEFINITIONS

A. With respect to Personal Injury Protection Coverage:

    1. "you" and "your" mean the named insured shown in the Declarations.

    2. "the Act" means the District of Columbia Compulsory No-Fault Motor Vehicle Insurance Act of 1982, Amendments Act of 1985.

B. In addition, the following words and phrases are defined for Personal Injury Protection

TIC
PL-8508  11-88
Page 1 of 4
Endorsement Symbol Number
A08020
Exhibit A

Coverage. They are in quotation marks when used.

C. "Bodily injury" means bodily harm sustained in an accident including any illness, disease or death resulting from bodily harm.

D. "Insured" means:

1. You;

2. Any other person while "occupying":

   a.  "your covered auto"; or

   b.  a "motor vehicle" or "vehicle" operated by you.

E. "Motor vehicle" means any device propelled by an internal combustion engine, electricity or steam. However, "motor vehicle" does not mean:

1. A traction engine used exclusively for drawing vehicles in fields; or

2. A road roller or a vehicle propelled only upon rails and tracks.

F. "Vehicle" means:

1. A trailer as defined in the Act; or

2. An appliance moved or designed to be moved over a publicly maintained way on wheels or traction tread which is:

   a.  operated by power other than muscular power; or

   b.  drawn by a draft animal or beast of burden.

G. "Your covered auto" means a "motor vehicle" shown in the Declarations as one to which both Personal Injury Protection Coverage and liability coverage under this policy apply.

**Limit of Liability**

The limit of liability shown in the Declarations page for this coverage is the most we will pay to or for an "insured" as the result of any one accident, regardless of the number of:

(1) Claims made;

(2) "Your covered autos";

(3) "Motor vehicles" or "vehicles" involved in the accident; or

(4) Insurers providing Personal Injury Protection benefits.

**Coordination and Non-Duplication**

(1) Personal Injury Protection benefits are excess over but shall not duplicate amounts paid, payable or required to be provided under:

   (a) workers' compensation; or

   (b) temporary nonoccupational disability insurance that is required by a state or the District of Columbia government.

This does not apply if the law authorizing these benefits makes them secondary to or duplicative of the benefits provided under this Act.

(2) Personal Injury Protection benefits are excess over but shall not duplicate amounts paid or payable for the same elements of loss under any other insurance coverages, except other Personal Injury Protection coverages.

(3) No person may recover duplicate Personal Injury Protection benefits for the same elements of loss.

**Priorities of Policies**

We will pay Personal Injury Protection benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority.

The priority level is:

First    The insurer providing benefits to the "insured" as a named insured. If two or more policies apply under this priority and one specifically insures the "motor vehicle" involved in the accident, it shall be the policy under which benefits are payable.

Second  The insurer of the "motor vehicle" "occupied" by the "insured".

Third    The insurer providing benefits to an "insured" who is "occupying" an uninsured "motor vehicle" operated by a named insured.

If two or more policies have equal priority within the highest applicable priority level:

TIC
PL-6508  11-88

Endorsement Symbol Number
A08020

(1) the insurer against which the claim is first made shall process and pay the claim as if wholly responsible, subject to subsequent contribution pro rata; and

(2) the maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

**Duties After an Accident or Loss**

The following is added:

A person seeking Personal Injury Protection Coverage must:

(1) notify us within 60 days of an accident of his or her election to receive Personal Injury Protection benefits. We and the "insured" may agree in writing to extend the 60 day period.

(2) if we request, furnish us a sworn statement of earnings or lack of earnings:

   (a) for a reasonable time prior to the accident; and

   (b) since the accident.

**General Provisions**

**Assignment of Claims to Future Benefits**

An "insured" may not assign his or her right to any Personal Injury Protection benefits payable in the future.

**Our Right to Recover Payment**

The following paragraph is added:

Our rights are subject to any applicable limitation stated in the Act and applicable regulation.

**PREMIUM RECOMPUTATION**

Section 6 of the Act places limitations on a person's right to sue for damages. The premium for the policy coverages reflects these limitations. If a court declares any of these limitations unenforceable we have the right to recompute the premium.

**SECTION II**

**Coverage Q    Work Loss Coverage**

**Coverage Q1    Work Loss Coverage**

We will pay Personal Injury Protection benefits for work loss in accordance with the Act. We will pay these benefits to or for an "insured" who sustains "bodily injury" in an accident arising out of the maintenance or use of a "motor vehicle" or "vehicle".

These work loss benefits consist of:

(1) Loss of Income. Subject to the maximum aggregate limit, up to 80% of the loss of gross income for work which an "insured" would have performed except for "bodily injury".

We will pay a higher percentage to the extent that an "insured" furnishes us with reasonable proof that his or her income tax is less than 20% of gross income.

(2) Replacement Services. Subject to the maximum aggregate limit, expenses reasonably incurred to obtain ordinary and necessary services to replace those the "insured" would have performed for personal or family benefit except for the "bodily injury".

The services must be performed within 3 years after the date of the accident. The services cannot be obtained to produce income for the "insured".

Work loss benefits do not continue after an "insured" dies.

**Limit of Liability**

The maximum aggregate limit of liability we will pay for this coverage to or for an "insured" as the result of any one accident is:

(1) $12,000 if Coverage Q appears in the Declarations page; or

(2) $24,000 if Coverage Q1 appears in the Declarations page.

This is regardless of the number of:

(1) Claims made;

(2) "Your covered autos";

TIC
PL-6508  11-88

Page 3 of 4

Endorsement Symbol Number
A08020

Exhibit A

(3) "Motor vehicles" or "vehicles" involved in the accident; or

(4) Insurers providing Personal Injury Protection benefits.

Section II is subject to all the provisions of Section I, except as modified herein.

## SECTION III

### Coverage X    Funeral Expense Coverage

We will pay Personal Injury Protection benefits for funeral expense in accordance with the Act. We will pay these benefits to or for an "insured" who sustains "bodily injury" in an accident arising out of the maintenance or use of a "motor vehicle" or "vehicle".

We will pay up to the applicable limit of liability for actual costs incurred for an "insured's" funeral or funeral related expenses.

### Limit of Liability

The applicable limit of liability for this coverage is $4,000. This is the most we will pay to or for an "insured" as the result of any one accident, regardless of the number of:

(1) Claims made;

(2) "Your covered autos";

(3) "Motor vehicles" or "vehicles" involved in the accident; or

(4) Insurers providing Personal Injury Protection benefits.

Section III is subject to all the provisions of Section I, except as modified herein.

TIC
PL-6506  11-88

Page 4 of 4

Endorsement Symbol Number
A08020

Exhibit A

## UNINSURED/UNDERINSURED MOTORISTS COVERAGE - DISTRICT OF COLUMBIA

The Uninsured Motorists Section, Coverage D, is replaced by the following:

**UNINSURED MOTORISTS COVERAGE**

**COVERAGE D   UNINSURED MOTORISTS (BODILY INJURY)**

**COVERAGE D2   UNINSURED MOTORISTS (PROPERTY DAMAGE)**

**UNDERINSURED MOTORISTS COVERAGE**

**COVERAGE D1   UNDERINSURED MOTORISTS (BODILY INJURY)**

**COVERAGE D3   UNDERINSURED MOTORISTS (PROPERTY DAMAGE)**

**INSURING AGREEMENT**

A. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or an "underinsured motor vehicle" where such coverage is indicated as applicable in the Declarations or the Schedule of this endorsement because of:

1. "Bodily injury" sustained by an "insured" and caused by an accident; and

2. "Property damage" caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle". We will pay damages under this coverage caused by an accident with an "underinsured motor vehicle" only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

Any judgement for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this endorsement means:

1. You or any "family member";

2. Any other person "occupying" "your covered auto";

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Property damage" as used in this endorsement means injury to or destruction of:

1. "Your covered auto";

2. Any property owned by a person listed in 1. and 2. of "insured" while contained in "your covered auto".

D. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of the accident in limits equal to or greater than the minimum limit specified in the District of Columbia no-fault law but less than the limit of liability for this coverage.

"Underinsured motor vehicle" does not include an "uninsured motor vehicle".

E. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no liability bond or policy applies at the time of the accident.

2. To which a liability bond or policy applies at the time of the accident. In this case its limit of liability must be less than the minimum limit for liability specified in the District of Columbia no-fault law.

3. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

   a. you or any "family member";

   b. a vehicle which you or any "family member" are "occupying"; or

   c. "your covered auto".

4. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

"Uninsured motor vehicle" does not include an "underinsured motor vehicle".

F. In addition, neither "uninsured motor vehicle" nor "underinsured motor vehicle" includes any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public road while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "property damage" or "bodily injury" sustained by any person:

1. While "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that person or the legal representative settles the "bodily injury" or "property damage" claim without our consent.

3. When "your covered auto" is being used to carry persons or property for a fee. This exclusion (A. 3.) does not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that person is entitled to do so.

5. For the first $200 of the amount of "property damages" to the property of each "insured" as the result of any one accident.

B. This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:

a. workers' compensation law; or

b. disability benefits law.

2. Any insurer of property.

## LIMIT OF LIABILITY

A. Single Limit

If the Declarations or the Schedule of this endorsement shows a single limit of liability for Coverage D and Coverage D2 combined, this limit is our maximum limit of liability for all damages resulting from any one accident with an "uninsured motor vehicle".

If the Declarations or the Schedule of this endorsement shows a single limit of liability for Coverage D1 and Coverage D3 combined, this limit is our maximum limit of liability for all damages resulting from any one accident with an "underinsured motor vehicle".

These limits are the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or Schedule of this endorsement; or

4. Vehicles involved in the accident.

B. Split Limits

If the Declarations or the Schedule of this endorsement shows separate limits of liability for Coverage D and Coverage D2, the limit of liability shown for each person for Coverage D is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident with an "uninsured motor vehicle". Subject to this limit for each person, the limit of liability shown in the Declarations or the Schedule of this endorsement for each accident for Coverage D is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident with an "uninsured motor vehicle". The limit of liability shown in the Declarations or the Schedule of this endorsement for Coverage D2 is our maximum limit of liability for all "property damage" resulting from any one accident with an "uninsured motor vehicle".

If the Declarations or the Schedule of this endorsement shows separate limits of liability for Coverage D1 and Coverage D3, the limit of

TIC
PL-6507 11-88

Endorsement Symbol Number
A08040

Exhibit A

liability shown for each person for Coverage D1 is our maximum limit of liability for all damages, including damages for care, loss of services or death, out of "bodily injury" sustained by any one person in any one accident with an "underinsured motor vehicle". Subject to this limit for each person, the limit of liability shown in the Declarations or the Schedule of this endorsement for each accident for Coverage D1 is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident with an "underinsured motor vehicle". The limit of liability shown in the Declarations or the Schedule of this endorsement for Coverage D3 is our maximum limit of liability for all "property damage" resulting from any one accident with an "underinsured motor vehicle".

These limits are the most we will pay regardless of the number of:

1. "insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or Schedule of this endorsement; or

4. Vehicles involved in the accident.

C. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

2. Paid or payable because of the "bodily injury" under any of the following or similar law;

   a. workers' compensation law; or

   b. disability benefits law; and

3. Paid or payable under personal injury protection coverage applicable to the same element of loss.

D. No payment will be made for loss paid or payable to the "insured" under Coverage E or Coverage F of the policy.

E. Any payment under this coverage will reduce any amount that person is entitled to recover

for the same damages under the liability insurance of the policy.

**OTHER INSURANCE**

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

**ARBITRATION**

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this endorsement; or

2. As to the amount of the damages;

the "insured" may request that the claim be resolved by the Board of Consumer Claims arbitration for the District of Columbia.

If we agree, the Board may hear and decide the matter. A decision agreed to by the Board will be binding.

B. However, if we do not agree:

1. The Board of Consumer Claims Arbitration for the District of Columbia will be disqualified from arbitrating the matter; and

2. either party may make a written demand for arbitration.

In this event, each party will select an arbitrator. The two arbitrators will select a third.

If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

C. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third party equally.

D. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

TIC
PL-6507 11-88

Page 3 of 4

Endorsement Symbol Number
A08040

Exhibit A

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of the damages. This applies only if the amount does not exceed the minimum limit of liability specified by the District of Columbia no-fault law. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## SCHEDULE

(Applicable only if not shown on the Declarations)

Auto No.                                    Limit of Liability

TIC
PL-6507  11-88

Page 4 of 4

Endorsement Symbol Number
A08040

Exhibit A